IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF DELAWARE

| | |
|---|---|
| REX MEDICAL LP, | : |
| Plaintiff, | : CIVIL ACTION NO. 05-28-GMS |
| v. | : |
| DATASCOPE CORP., | : **JURY TRIAL DEMANDED** |
| Defendant. | : |

## REPLY OF PLAINTIFF REX MEDICAL LP TO COUNTERCLAIM OF DEFENDANT DATASCOPE CORP.

Plaintiff, Rex Medical LP (hereinafter "Rex"), by and through its attorneys, Fox Rothschild LLP, replies to the counterclaims of defendant Datascope Corp. (hereinafter "Datascope"), as follows:

1. Admitted in part; denied in part. Rex admits only that it has received certain payments from Datascope under the technology transfer agreements, and those payments total approximately $5 million. Rex denies the remaining allegations contained in paragraph 1 of Datascope's counterclaim as conclusions of law to which no responsive pleading is required.

2. Denied.

3. Admitted.

4. Admitted in part; denied in part. Rex admits only that it is a Pennsylvania limited partnership in the business of designing, developing and bringing to market medical devices, and it maintains offices at 555 North Lane, Suite 6101, Conshohocken, Pennsylvania. Rex denies the remaining allegations contained in paragraph 4 of Datascope's counterclaim.

5. Denied. Rex denies the allegations contained in paragraph 5 of Datascope's counterclaim as conclusions of law to which no responsive pleading is required.

6.  Admitted in part; denied in part. Rex admits only that, prior to May 2003, Rex and Datascope discussed ProLumen and ProLumen Plus and both products are thrombectomy devices designed for thrombus maceration and removal in dialysis access grafts. Rex denies as stated the remaining allegations contained in paragraph 6 of Datascope's counterclaim.

7.  Admitted in part; denied in part. Rex admits only that, in discussions between Rex and Datascope, the parties discussed schedules for delivery of the technology covered by the technology transfer agreements. Rex is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 7 of Datascope's counterclaim and, thus, such allegations are denied.

8.  Admitted in part; denied in part. Rex admits only that Datascope expressed interest in ProLumen Plus. Rex is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 8 of Datascope's counterclaim and, thus, such allegations are denied.

9.  Denied. Rex denies the characterizations of the Thrombectomy Technology Transfer Agreement contained in paragraph 9 of Datascope's counterclaim. The Thrombectomy Technology Transfer Agreement is a document that speaks for itself and should be referred to for its contents.

10. Admitted in part; denied in part. Rex admits only that, to date, Datascope has made payments to Rex under the Thrombectomy Technology Transfer Agreement totaling approximately $5 million as consideration for the transfer of ProLumen. Rex denies the remaining allegations contained in paragraph 10 of Datascope's counterclaim.

11. Denied. Rex denies the allegations contained in paragraph 11 of Datascope's counterclaim as conclusions of law to which no responsive pleading is required.

12. Admitted in part; denied in part. Rex admits only that, in 2004, Datascope began manufacturing and selling ProLumen and, at some point after Datascope began manufacturing and selling ProLumen, it had to issue a restocking of the product in order to address some issues or concerns that arose. Rex specifically denies that it did anything wrong in the design and development of ProLumen and denies the remaining allegations contained in paragraph 12 of Datascope's counterclaim.

13. Denied. Rex denies the allegations contained in paragraph 13 of Datascope's counterclaim as conclusions of law to which no responsive pleading is required.

14. Admitted in part; denied in part. Rex admits only that it is entitled to an earn-out payment of twelve percent (12%) of net sales of ProLumen and ProLumen Plus under the Thrombectomy Technology Transfer Agreement. Rex denies the remaining allegations contained in paragraph 14 of Datascope's counterclaim as conclusions of law to which no responsive pleading is required.

15. Admitted in part; denied in part. Rex admits only that, shortly after November 15, 2004, it received a letter from Datascope alleging, among other things, that Rex was in breach of the Thrombectomy Technology Transfer Agreement. Datascope's letter is a document that speaks for itself and should be referred to for its contents. Rex specifically denies the allegations set forth in Datascope's letter and the remaining allegations contained in paragraph 15 of Datascope's counterclaim.

16. Denied. Rex denies the allegations contained in paragraph 16 of Datascope's counterclaim as conclusions of law to which no responsive pleading is required.

17. Denied. Rex specifically denies that is has any obligation to deliver the X-Wire technology to Datascope, and denies the remaining allegations contained in paragraph 17 of Datascope's counterclaim as conclusions of law to which no responsive pleading is required.

18. Admitted in part; denied in part. Rex admits only that, on November 17, 2003, Rex and Datascope entered the Innermark and Innerlock Technology Transfer Agreements. The remaining allegations contained in paragraph 18 of Datascope's counterclaim are denied as characterizations or interpretations of the Innermark and Innerlock Technology Transfer Agreements, which are documents that speak for themselves and should be referred to for their contents.

19. Denied. Rex denies the characterizations of the Innermark and Innerlock Technology Transfer Agreements contained in paragraph 19 of Datascope's counterclaim. The Innermark and Innerlock Technology Transfer Agreements are documents that speak for themselves and should be referred to for their contents.

20. Denied. Rex denies the allegations contained in paragraph 20 of Datascope's counterclaim as conclusions of law to which no responsive pleading is required. Moreover, the Innermark and Innerlock Technology Transfer Agreements are documents that speak for themselves and should be referred to for their contents.

21. Denied. The letter that Datascope refers to in paragraph 21 of its counterclaim is a document that speaks for itself and should be referred to for its content. Rex denies the remaining allegations contained in paragraph 21 of Datascope's counterclaim as conclusions of law to which no responsive pleading is required.

22. Denied. Rex denies the allegations contained in paragraph 22 of Datascope's counterclaim as conclusions of law to which no responsive pleading is required.

## COUNT I

23. Rex incorporates its answers to all of the paragraphs of Datascope's counterclaim (outside of Count I) as if fully set forth herein.

24. Admitted.

25. - 27. Denied. Rex denies the allegations contained in paragraphs 25 through 27 of Datascope's counterclaim as conclusions of law to which no responsive pleading is required.

## COUNT II

28. Rex incorporates its answers to all of the paragraphs of Datascope's counterclaim (outside of Count II) as if fully set forth herein.

29. Admitted.

30. - 32. Denied. Rex denies the allegations contained in paragraphs 30 through 32 of Datascope's counterclaim as conclusions of law to which no responsive pleading is required.

## COUNT III

33. Rex incorporates its answers to all of the paragraphs of Datascope's counterclaim (outside of Count III) as if fully set forth herein.

34. Admitted.

35. - 37. Denied. Rex denies the allegations contained in paragraphs 35 through 37 of Datascope's counterclaim as conclusions of law to which no responsive pleading is required.

## JURY DEMAND

38. Denied. Rex denies the allegations contained in paragraph 38 of Datascope's counterclaim as conclusions of law to which no responsive pleading is required. By way of further answer, Rex has demanded a trial by jury.

## FIRST AFFIRMATIVE DEFENSE

Datascope's counterclaim fails to state a claim against Rex upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Some or all of the claims asserted in Datascope's counterclaim may be barred, in whole or in part, by the applicable statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

Some or all of the claims asserted in Datascope's counterclaim are barred by the doctrines of waiver, estoppel, laches and/or release.

## FOURTH AFFIRMATIVE DEFENSE

Some or all of the claims asserted in Datascope's counterclaim are barred by virtue of Datascope's material breach of the Thrombectomy Technology Transfer Agreement, Innermark Technology Transfer Agreement and/or Innerlock Technology Transfer Agreement as more fully described in Rex's complaint in this action.

## FIFTH AFFIRMATIVE DEFENSE

Some or all of the claims asserted in Datascope's counterclaim are barred, in whole or in part, by the terms of the Thrombectomy Technology Transfer Agreement, Innermark Technology Transfer Agreement and/or Innerlock Technology Transfer Agreement.

## SIXTH AFFIRMATIVE DEFENSE

The injuries and/or damages, if any, that Datascope claims it suffered were caused by its own actions and/or inactions, and/or the actions and/or inactions of third parties over whom Rex had no control or duty to control.

## SEVENTH AFFIRMATIVE DEFENSE

Datacope's requests for equitable relief are barred, in whole or in part, by the doctrine of unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE

Some or all of the claims asserted in Datascope's counterclaim are barred by the doctrine of force majeure.

## NINTH AFFIRMATIVE DEFENSE

Some or all of the claims asserted in Datascope's counterclaim are barred, in whole or in part, because any alleged breach of the Thrombectomy Technology Transfer Agreement, Innermark Technology Transfer Agreement and/or Innerlock Technology Transfer Agreement that Datascope attempts to attribute to Rex was, in fact, a result of causes or conditions beyond Rex's reasonable control and did not result from any fault or negligence of Rex.

## TENTH AFFIRMATIVE DEFENSE

Count I of Datascope's counterclaim is barred, in whole or in part, because any alleged delays or failures of Rex to perform under the Thrombectomy Technology Transfer Agreement with respect to ProLumen were caused, in whole or in part, by (a) Datascope's inadequate staff and technical capacity; (b) Datascope's significant delays in responding to Rex's inquiries and requests for approvals; (c) cosmetic and design changes to ProLumen some of which were requested by Datascope; and (d) other causes, limitations and conditions beyond Rex's reasonable control, including Datascope's decision to give priority to projects other than those of Rex.

## ELEVENTH AFFIRMATIVE DEFENSE

Count I of Datascope's counterclaim is barred, in whole or in part, because any alleged delays or failures of Rex to perform under the Thrombectomy Technology Transfer Agreement with respect to ProLumen Plus were caused, in whole or in part, by (a) Datascope's staff limitations, deficiencies and several month delay in approving the prototype of ProLumen Plus that Rex provided to Datascope on or before October 1, 2003; (b) Datascope's significant delays in responding to Rex's requests and inquiries throughout the product research and development process; (c) Datascope's instructions to Rex to delay builds of ProLumen Plus until Datascope implemented changes to ProLumen; (d) vendor issues with third parties beyond Rex's control, including Clinical Instruments as a result of its delays, limitations and inability to marry the embolectomy balloon to Rex's ProLumen wire as Clinical Instruments had previously represented; and (e) other causes, limitations and conditions beyond Rex's reasonable control.

## TWELFTH AFFIRMATIVE DEFENSE

Counts II and III of Datascope's counterclaim are barred, in whole or in part, because any alleged delays or failures of Rex to perform under the Innermark and/or Innerlock Technology Transfer Agreements were caused, in whole or in part, by (a) Datascope's staff limitations and deficiencies; (b) Datascope's significant delays in responding to Rex's requests and inquiries throughout the product research and development process; (c) Datascope's actions in forcing Rex to use Cadmold as a subcontractor to manufacture the molds for the Innermark and Innerlock devices instead of Martech (the company that Rex identified and wanted to use for such task); (d) the esthetic and ergonomic changes to the products imposed on Rex by Datascope which required Rex to undertake redesigns of the inner workings of the products; (e) Datascope's

failure to commit the necessary internal resources and priority to the Innermark and Innerlock projects; and (f) other actions of Datascope and others beyond Rex's reasonable control.

### THIRTEENTH AFFIRMATIVE DEFENSE

Datascope's counterclaim is barred, in whole or in part, because Datascope has failed to use reasonable business efforts to promote the distribution and sale of the products.

### FOURTEENTH AFFIRMATIVE DEFENSE

Datascope's counterclaim is barred, in whole or in part, because Datascope has entered into agreements inconsistent with the terms or obligations of the Thrombectomy Technology Transfer Agreement, Innermark Technology Transfer Agreement and/or Innerlock Technology Transfer Agreement.

### FIFTEENTH AFFIRMATIVE DEFENSE

Datascope's counterclaim is barred, in whole or in part, because Datascope does not have the financial resources or business operations to enable it to manufacture (or have manufactured), distribute, sell or reasonably commercialize ProLumen, ProLumen Plus, Innermark and/or Innerlock.

### SIXTEENTH AFFIRMATIVE DEFENSE

Datascope's counterclaim is barred, in whole or in part, because Datascope has not used good faith and reasonable diligence to conduct all operations with respect to manufacturing, marketing, distribution and sale of ProLumen.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Rex has no contractual obligation whatsoever to develop and deliver the X-Wire to Datascope.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Datascope's counterclaim is barred, in whole or in part, because Datascope has failed to mitigate its alleged damages.

## NINETEENTH AFFIRMATIVE DEFENSE

Datascope has no basis to seek injunctive relief because it has an adequate remedy at law for any of its alleged damages.

WHEREFORE, Rex respectfully requests this Honorable Court to enter judgment in its favor and against Datascope with respect to Datascope's counterclaim, together with attorneys' fees, costs and expenses incurred in defending this matter and such other relief the Court deems just and proper.

FOX ROTHSCHILD LLP

By: _____
Gregory B. Williams, Esquire (I.D. No. 4195)
919 N. Market Street, Suite 1300
Wilmington, DE 19899
(302) 622-4211

and

Of Counsel:
Abraham C. Reich, Esquire
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103

Attorneys for Plaintiff
Rex Medical LP

Date: April 5, 2005

## CERTIFICATE OF SERVICE

I hereby certify that, on April 5, 2005, I caused to be electronically filed a true and correct copy of the REPLY OF PLAINTIFF REX MEDICAL LP TO COUNTERCLAIM OF DEFENDANT DATASCOPE CORP. with the Clerk's Office using CM/ECF, which system will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Kevin M. Baird, Esquire
> Young Conaway Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801

I further certify that, on April 5, 2005, I caused a copy of the REPLY OF PLAINTIFF REX MEDICAL LP TO COUNTERCLAIM OF DEFENDANT DATASCOPE CORP. to be served on the following counsel of record:

### VIA HAND DELIVERY

> Rolin P. Bissell, Esquire
> Kevin M. Baird, Esquire
> Young Conaway Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801

### VIA U.S. MAIL

> Robert J. Jossen, Esquire
> Joseph F. Donley, Esquire
> Dechert LLP
> 30 Rockefeller Plaza
> New York, NY 10112

GREGORY B. WILLIAMS